COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Alston and Senior Judge Annunziata

WILLIAM BENTLEY

v.      Record No. 1579-18-3

CITY OF ROANOKE DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MARCH 5, 2019

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William N. Alexander, II, Judge

(Joseph F. Vannoy, on brief), for appellant. Appellant submitting
on brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; L. Brad Braford, Guardian *ad litem* for the minor
child, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.


William Bentley (father) appeals an order terminating his parental rights to his child and

approving the foster care goal of adoption. Father argues that the trial court erred in terminating his

parental rights because "the evidence was insufficient to support termination." Upon reviewing the

record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we

affirm the decision of the circuit court.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father and Ciera Wright (mother) are the biological parents to a child born in October 2015. The City of Roanoke Department of Social Services (the Department) first became involved with this child in late December 2015, when it received a report that mother left the child and the child's two-year-old sibling alone in the apartment while mother did laundry in a different building.[2] While offering ongoing services to the family, the Department became concerned about acts of domestic violence between mother and father and their abuse of illegal drugs. The Department developed a safety plan that prevented mother and father from having contact with one another while the child was present. The Department referred father to a domestic violence alternative program, which he did not attend. The Department also tried to help mother with medication management and counseling, but mother did not attend appointments or return phone calls.

On April 26, 2016, mother relocated and did not provide a viable address to the Department. However, on July 13, 2016, the Department learned that mother and father were living together, and they continued to have domestic violence issues between them. Mother and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father is not the biological parent to the child's sibling.

father continued to engage in altercations, which required police intervention at times. The Department assisted mother in moving to her own apartment.

On several occasions, mother reported to the Department that father was selling drugs. Both mother and father tested positive for marijuana, and the Department believed that mother's drug use was "linked to her relationship" with father.

The Department sought to remove the child from mother's custody after she was non-compliant with mental health services and said, "Mentally, I don't feel good." In addition, the Department was concerned about the instability of mother's housing and that there was an "imminent threat of losing electricity due to non-payment." The Department did not consider father as a viable placement because he did not attend the domestic violence program and he was living with his mother, who engaged in physical altercations with mother. On August 31, 2016, the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order.

On September 2, 2016, the JDR court entered a preliminary removal order and adjudicated that the child was abused or neglected. On October 31, 2016, the JDR court entered a dispositional order. Father did not appeal that order or the JDR court's abuse and neglect finding.

Both the paternal grandmother and the paternal grandfather and his wife filed petitions for custody of the child. The Department did not recommend placement of the child with the paternal grandmother due to concerns that she did not report that father and her boyfriend lived with her in the home, her medical issues, her alcohol consumption, her use of cigarettes, the lack of cleanliness in the home, and her financial inability to care for the child. On the other hand, the Department recommended placement of the child with the paternal grandfather and his wife. The home of the paternal grandfather and his wife was clean, and they were financially able to

care for the child. They did not have any medical issues that would affect their ability to care for the child.

On November 22, 2016, the JDR court transferred legal and physical custody of the child to the paternal grandfather and his wife. On February 2, 2017, however, the paternal grandfather's wife contacted the Department because father had physically assaulted the paternal grandfather and mother had verbally assaulted him. On February 13, 2017, the paternal grandfather and his wife moved to be relieved of custody because "[t]he parents of [the] child [were] causing alot [sic] of trouble." On February 15, 2017, the paternal grandfather and his wife entered into an entrustment agreement with the Department, and the child was returned to foster care. On March 30, 2017, the JDR court granted the request of the paternal grandfather and his wife to be relieved of custody and transferred custody of the child back to the Department.

After the child returned to foster care, the Department explained to father what actions he needed to take to accomplish the goal of return home. The Department required father to maintain contact with the agency and comply with its requirements. Father had to complete a substance abuse evaluation and follow through with all recommendations. Father had to comply with random drug screens and remain sober. Father had to obtain and maintain employment and stable housing outside of his mother's house, which previously had been determined not to be an appropriate placement. Father had to participate in domestic violence counseling and parenting classes. He also had to attend all visitations, which he consistently did until May 2017.

In April 2017, mother and father attended a domestic violence counseling session, but father left the session following several verbal altercations with mother. Father never returned

for counseling. On May 10, 2017, mother obtained a protective order against father.[3] The protective order included the child. Subsequently, father told the Department that he preferred for the child to be returned to mother's care, so he would not participate in the foster care plan. At that time, father had not obtained verifiable employment or a separate home from his mother's house. Aside from the one meeting in April 2017, father had not participated in domestic violence counseling or parenting classes. The Department told father to contact them if he decided he wanted to participate in services, but he did not do so. Meanwhile, the Department provided numerous services to mother and, since she had complied with those services, the Department started to offer her community and overnight visitations.

Beginning in late July 2017, however, the Department noticed that mother was "devolving" because she would call the Department "hysterically crying" and reported conflicting information. The Department learned that mother was no longer employed and that she could not afford utilities or food. Furthermore, the Department learned that father continued to visit mother and stay at her house, despite the protective order. Mother also refused to take a drug test, until the JDR court ordered her to submit to a hair follicle test. Mother tested positive for marijuana and cocaine, and when she gave birth to her youngest child in September 2017, that child tested positive for marijuana exposure. As a result of mother's positive drug tests, the Department stopped the trial home transition, and all visitations returned to the office.

On November 21, 2017, the JDR court held a permanency planning hearing. The JDR court subsequently entered orders terminating father's parental rights and approving the foster care goal of adoption. Father appealed those orders to the circuit court.

---

[3] After the birth of her youngest child in September 2017, mother sought to dismiss the protective order against father.

On August 22, 2018, mother signed an entrustment agreement and voluntarily surrendered legal custody of the child to the Department. On the same day, the parties appeared before the circuit court for father's appeal of the JDR court orders. The Department presented evidence that father had not completed any of the required services. In addition, the social worker testified that when the child first entered foster care, the child had a "smokers cough" that was "real raspy" and was from second-hand cigarette smoke. The child's cough improved over time. The social worker testified that the child was "a very bright child" and had met all of the developmental milestones. The child was thriving and "doing beautifully" in foster care.

Father testified about what he had done while the child was in foster care. He still lived with his mother, but was looking for his own place. He stated that he had been working full-time for four months, which was the longest that he had ever held a job. Father admitted that he had not attended parenting classes, but was "trying to sign up" for them. He explained that he thought that mother was in a "better state" to care for the child than he was, and he was surprised that she signed the entrustment agreement. He asked the circuit court to give him "enough time to get [his] stuff together," so he could have custody of the child. He estimated that he would need seven months to do so.

On cross-examination, father stated that he and mother had not been a couple for "months." He acknowledged that in the past, he had obtained two protective orders against her, and she had obtained four protective orders against him. He admitted that he sought the protective orders against mother because she was "wild" and "violent." He also acknowledged that on June 22, 2018, he was placed on the therapeutic docket for one year, and the court ordered him to participate in therapeutic services with Blue Ridge Behavioral Healthcare due to a charge of assault and battery against mother. He had not participated in any domestic violence counseling as of the date of the circuit court hearing.

After hearing all of the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2) and approved the goal of adoption. On September 6, 2018, the circuit court entered orders memorializing its rulings. This appeal followed.

ANALYSIS

Father argues that the circuit court erred in finding that the evidence was sufficient to support the termination of his parental rights.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the

- 7 -

parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005).

Father contends that he had made progress toward having the child placed with him. The Department reviewed with father what he needed to accomplish to achieve the goal of "return home." Contrary to father's arguments, the evidence proved that father had not substantially remedied the conditions that led to the child's continued placement in foster care. Father had not obtained his own housing and still lived at his mother's house, which the Department had determined was not a suitable placement for the child. Father had started a job only four months before the circuit court hearing, although the Department had specified more than a year earlier that father had to secure employment. Father had not participated in domestic violence counseling or parenting classes. At trial, he testified that he was "trying" to sign up for parenting classes, but had not yet done so.

Father asked the court for seven additional months to complete the Department's requirements, even though the child had been in foster care for approximately two years. Code § 16.1-283(C)(2) requires parents to remedy the conditions "within a reasonable period of time not to exceed 12 months." The circuit court stated that father had "had the chance" to remedy the situation, but had failed to do so. The circuit court held that it was "just too late" for father to say now that he wanted to participate in the services because he had "had at least twelve months to take care of the problems." "Code § 16.1-283(C)(2)'s twelve-month time limit 'was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement.'" Thach, 63 Va. App. at 171 (quoting L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56 (2003)).

The Department presented evidence that the child was doing well in foster care. The child had met all of the developmental milestones and was "thriving." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the evidence, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating father's parental rights pursuant to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.