COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Frank

MELISSA LEPHEW

v.      Record No. 1822-18-3

ROANOKE COUNTY DEPARTMENT OF
  SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JULY 30, 2019

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
David B. Carson, Judge

(Suzanne Moushegian; Moushegian Law, P.L.L.C., on brief), for
appellant.  Appellant submitting on brief.

(Rachel W. Lower, Assistant County Attorney; Joseph F. Vannoy,
Guardian *ad litem* for the minor children, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Melissa Lephew (mother) appeals the order terminating her parental rights to her children

and approving the foster care goal of adoption.  Mother argues that the circuit court erred by

(1) terminating her parental rights under Code § 16.1-283(B) and (C)(2) because she had

substantially remedied the conditions that led to the children being placed in foster care and

termination of her parental rights was not in the children's best interests; and (2) approving the

foster care goal of adoption because the Roanoke County Department of Social Services (the

Department) did not prove that she failed to complete the recommended services and adoption was

not in the children's best interests.  Upon reviewing the record and briefs of the parties, we

conclude that the circuit court did not err.  Accordingly, we affirm the decision of the circuit

court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Marvin Lephew (father) are the biological parents of three children. The Department had been involved with the family since 2014 because of allegations of neglect, lack of supervision, the children's developmental delays, and recurring lice problems with the children.[2] On September 21, 2016, the Department received a report that the two youngest children, who were five years old (the "middle child") and nine months old (the "youngest child") at the time, were frequently left in their cribs all day. The middle child was not toilet trained and could barely walk. The Department learned that mother would not change the youngest child's diaper and sometimes placed Tylenol in his bottle to make him sleepy. The oldest child, who was thirteen years old at the time, frequently had to take care of the younger children. The oldest child struggled with school, and since mother and father had no transportation, she could not go to school early for tutoring. The family's residence was infested with lice, bed bugs, and roaches. At one point, the middle child had over one hundred nits and twenty-five bugs removed from her head. The middle child had never been to the dentist, and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] In 2003, the oldest child was in foster care for approximately one year due to physical and medical neglect.

the oldest child had fifteen cavities as of February 2017.  Mother and father had cognitive limitations, and father had mental health issues.

Beginning in November 2016, the Department provided ongoing services, including financial assistance, family support services, bus passes, and mental health services.  Mother divided her time between staying with father and the children and her own mother in Roanoke City because she was helping care for her own mother.  The oldest child was hospitalized in February 2017 for suicidal thoughts.  The Department arranged for counseling and medication management for the oldest child, as well as tutoring services during the school day.  The Department provided clothing for the children, paid for repeated lice treatments for the family members, and paid for heat extermination to treat the bedbugs and roaches in the home.  The Department referred the youngest child for early intervention services to work on his gross motor skills, but the parents continued to leave him in his crib all of the time.  Father frequently requested financial assistance from the Department to purchase cleaning supplies, detergent, and food for the family.

On May 8, 2017, the Department removed the children from the home because "the family's level of need [was] still so high . . . [and] no significant gains had been achieved."  On June 12, 2017, the City of Salem Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected, and on July 10, 2017, the JDR court entered the dispositional orders.  Mother did not appeal the dispositional orders.

The Department continued to provide services to the family.  In addition to bus passes and food stamps for the parents, the Department initially arranged weekly supervised visitation between the parents and the children.  When the foster care goal of return home was changed to relative placement in December 2017, the oldest child opted not to participate in any further visitation with her parents; visitation with the two younger children was changed to biweekly.  In

April 2018, after the JDR court terminated the parents' parental rights, the parents' visitation with the two younger children became monthly. Since December 2017, the parents canceled six out of fourteen visits. During the visits, the parents focused their attention on the youngest child, often leaving the middle child to play by herself. The social worker testified that she never saw an improvement in the parents' parenting skills or demeanor while the children were in foster care.

In addition to providing visitation, the Department referred mother and father for parenting classes and parental capacity evaluations. In the fall of 2017, at the direction of the Department, Cheryl Henry, MA, QMHP, conducted the eight-week parenting class for mother and father. Henry explained that although mother and father were "cooperative and willing to participate, they struggle[d] cognitively with the concepts discussed." Henry was concerned that mother and father lacked "parental skill sets" and did not "possess sufficient cognitive abilities to gain such parental competences."

Jeannie Berger, a licensed clinical psychologist, completed the parental capacity evaluations in August 2017. Mother's responses to the psychological tests revealed that she was "functioning almost three standard deviations below the mean compared to others her age, at the 0.3%, and almost one standard deviation below the cut off for Intellectual Disabilities." Mother's cognitive limitations were "too significant" to allow her to "meet the minimal requirements of caregiving." Berger further explained that "[b]ecause of [mother's] cognitive limitations there was nothing that [Berger] could come up with that might help [mother's] parenting." Berger concluded that "although possessing great love for their children, [mother and father] did not have [the] cognitive capacity to safely care for them, to respond to their changing needs, [and] to parent three children at different developmental stages . . . ."

On April 9, 2018, the JDR court terminated mother and father's parental rights and approved the foster care goal of adoption. The parents appealed to the circuit court.

On October 10, 2018, the parties appeared before the circuit court. The Department presented evidence about the children's condition after they entered foster care. Three days after the youngest child entered foster care, he started crawling. A few days after entering foster care, the middle child was hospitalized for dehydration because "she was getting good nutrition and her body was in shock." The oldest child appeared "happier" and "relieved."

The Department reported that the children were doing "phenomenal" in foster care. The three children had been in the same foster home since they were removed from the family home. The oldest child was doing very well in school and was involved in several extracurricular activities. The middle child initially struggled with walking, but at the time of the hearing, she was active in cheerleading and baton dance classes. She was meeting all of her developmental milestones. Although he could not crawl when he entered foster care, the youngest child was walking and running at the time of the circuit court hearing. He was struggling developmentally with his vocabulary and attended a developmentally delayed preschool. The foster family expressed a desire to adopt the children.

Father testified that he and mother had been in a relationship since 1997, and married since 2001. In December 2017 or January 2018, father moved to a three-bedroom apartment, where mother often stayed with him. Father testified that he would be willing to assist mother at home with the children.

After hearing all of the evidence and argument, the circuit court found that it was in the children's best interests to terminate mother and father's parental rights under Code § 16.1-283(B) and (C)(2). The circuit court also approved the foster care goal of adoption. Mother appealed the rulings to this Court.

ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(B) and (C)(2) and approving the foster care goal of adoption. She asserts that she had substantially complied with the Department's required services and "had effectively remedied the issues that had caused her children to come into care to the best of her cognitive ability."

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court found that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257,

- 6 -

271 (2005). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." Id. (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)).

The Department presented evidence that mother completed many of the Department's requirements, including a relative identifier, a background check, parenting classes, and the parental capacity evaluation. She attended some of the family partnership meetings and visitations. Although mother completed many of the services, her parenting skills did not improve. Berger explained that mother had significant cognitive limitations and lacked "insight into how to provide for [the children's] needs." Mother was "unable to live independently or function without supervision and structure" and had "never cared for her children independently." Berger noted that mother's limitations could not be "remediated through parent training or in-home services or medication."

The circuit court found that mother loved her children and had "done the absolute best that [she could] do." Considering all of the evidence, especially Berger's report and testimony, the circuit court, however, found that mother was unable to remedy the conditions that led to the children being placed in foster care.

At the time of the circuit court hearing, the children had been in foster care for seventeen months. The circuit court heard evidence that the children had improved significantly while in foster care and were in a potentially adoptive home. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the totality of the circumstances, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.