COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata


ROY MITCHELL DARBY

MEMORANDUM OPINION[*]

v.      Record No. 0611-19-3

PER CURIAM
DECEMBER 3, 2019

CITY OF ROANOKE DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Wayne D. Inge, on brief), for appellant.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Joseph F. Vannoy, Guardian *ad litem* for the minor
children, on brief), for appellee.


Roy Mitchell Darby (father) appeals the circuit court's orders terminating his parental rights,

approving the foster care goals, and denying his motions for custody. Father argues that the circuit

court erred by (1) finding that the evidence was sufficient to terminate his parental rights to S.D. and

N.D. and approve the foster care goal of adoption; (2) finding that the termination of his parental

rights was in the children's best interests; (3) finding that the City of Roanoke Department of Social

Services (the Department) made reasonable efforts to reunite the children with father; (4) finding

that the Department provided reasonable and appropriate services to father; and (5) denying his

motions for custody.[1] Upon reviewing the record and briefs of the parties, we conclude that this

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Father did not address the circuit court's denial of his motion for custody in the
argument section of his opening brief; therefore, the issue is waived. See Muhammad v.
Commonwealth, 269 Va. 451, 478 (2005) ("Failure to adequately brief an assignment of error is
considered a waiver.").

appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

## BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father is the biological parent to W.D., S.D., and N.D., who are the subject of this appeal.[3] The Department became involved with the family in October 2016, after then-eight-year-old N.D. disclosed to a friend that father had sexually abused her. The Department spoke with father, and he agreed that the children could be placed with a neighbor pending the Department's investigation. The Department subsequently obtained a protective order prohibiting father from contacting and intimidating the children. The Department also discovered that while father worked nights, then-fourteen-year-old W.D. watched N.D. and her twin, S.D. Furthermore, the Department learned that the children had not seen a doctor for a while, and S.D. needed dental work. W.D. had some mental health issues, and S.D. and N.D. had developmental delays.

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] The children's mother supported the Department's goal of permanent foster care for W.D. and signed voluntary entrustment agreements for S.D. and N.D.

After learning of the additional neglect and father's interference with the neighbor's ability to schedule appointments and care for the children, the Department filed for the children's removal from father's custody.[4] On February 9, 2017, the Roanoke City Juvenile and Domestic Relations District Court (the JDR court) entered emergency removal orders for the children. The Department arranged for the children to continue living with the neighbor as their foster care placement.

The Department met with father and explained that because of the sexual abuse of N.D., it would not recommend a goal of return home for her. If the siblings were to remain together, then the Department's primary goal initially was relative placement. The Department explored the possibility of placement with a paternal aunt. The paternal aunt and her husband had filed petitions for custody, but the JDR court denied their petitions. Father's wife and an adult daughter also had petitioned for custody, but the JDR court denied their petitions.[5] The concurrent goal for N.D. was adoption, and the concurrent goal for W.D. and S.D. was return home.[6]

Father repeatedly expressed his desire for the children to return home and filed motions for their custody. The Department explained to father that before W.D. and S.D. could return

---

[4] The Department's investigation was founded as a Level 1 for sexual abuse for N.D. and Level 1 for physical neglect for all three children. In 2016, the Department had investigated father for another complaint for sexual abuse of a child for whom he babysat. The investigation was founded as a Level 1 for sexual abuse.

[5] Father's wife, but not his adult daughter, appealed the denial of the custody petition. The circuit court denied her petition, and she appealed to this Court. We dismissed her appeal after she failed to file an opening brief. See Darby v. Roanoke City Dep't of Soc. Servs., No. 0636-19-3 (Va. Ct. App. Aug. 26, 2019).

[6] Father appealed the orders approving the removal of W.D. and S.D. and the initial foster care goals. The circuit court affirmed the JDR court's orders. Father appealed the matters to this Court, and we summarily affirmed the circuit court's rulings. See Darby v. Roanoke City Dep't of Soc. Servs., No. 1930-17-3 (Va. Ct. App. Nov. 20, 2018).

home, father had to sign releases, complete a parenting class, accept responsibility for why the children entered foster care, complete a psychological and parental capacity evaluation, and participate in family therapy when appropriate. Father signed the releases and attended the parenting classes. He never accepted responsibility for the children being in foster care and denied any wrongdoing.

The Department had arranged for father to visit weekly with W.D. and S.D.[7] During the visitations, father voiced his disagreements with the case and the Department in front of the children. When the Department intervened to stop the inappropriate behavior, father became angry. W.D. stopped coming to the visits after February 5, 2018, and because of his age, the Department did not force W.D. to visit; S.D. continued with visitation. The Department had to suspend father's visitations with S.D. several times due to father's inappropriate and "out of control" behavior. Father's last visit with S.D. was in November 2018, because he was unable to control his anger and behavior.

In April 2017, father met with Dr. Klaire Mundy for a psychological and parenting capacity evaluation. Dr. Mundy found that father had had "power and control issues" for the past twenty-five years. He had been accused of sexual misconduct prior to the incident with N.D. Dr. Mundy noted that father had used religion "as a means of trying to cloak his choices and . . . behaviors." Further, Dr. Mundy found that father had "been seeking approval throughout much of his life from different people . . . to support his abandonment issues." Dr. Mundy also found that father had a tendency to blame others for his situation. Dr. Mundy diagnosed father with adjustment disorder with anxiety and mixed personality with narcissistic, antisocial, and obsessive-compulsive personality features. Dr. Mundy recommended that father see a counselor and psychiatrist who specialized in anger management, anxiety, and aggression.

---

[7] Father was never allowed to visit N.D.

She also recommended that father participate in group therapy for anger management and domestic violence, as well as couples counseling with his wife. Dr. Mundy did not recommend that N.D. be returned to father's home, and if W.D. and S.D. were returned home, then she recommended in-home counseling and monitoring. Dr. Mundy opined that father's prognosis for rehabilitation was "poor."

After receiving Dr. Mundy's report, the Department required father to participate in anger management classes, couples counseling, and individual counseling. Father and his wife attended couples counseling. Father had been in individual counseling periodically since November 2011. His counselor, David Peterson, started seeing father weekly after the Department became involved with the family in 2016. While the children were in foster care, father participated in a ten-day program that provided daily individual and group counseling and weekly psychiatric appointments. Peterson noticed an increase in father's anger toward the Department and recommended that father talk to his doctor about medication. Father started taking medication, but he continued to have angry outbursts. Peterson testified that as recently as a week before the circuit court hearing, father had an angry outburst at the meeting with the Department and was unable to calm down. The meeting ended early because of father's angry outburst. Peterson opined that despite being provided with various tools to handle stressful and difficult situations, father still could not deal with those situations and instead reverted to anger.

Father's anger was a concern throughout the time that the children were in foster care. Father participated in an anger management class in 2018. Father was able to implement behavioral strategies in the short term, but not the long term. According to the instructor, father had a "difficult time exercising restraint and altering his reactions."

All three of the children participated in counseling. N.D. had been diagnosed with "adjustment disorder with anxiety, unspecified anxiety disorder, and unspecified trauma and

stress earlier disorder." Initially, N.D. was "kind of closed off, very shy, [and] just very timid;" however, throughout her time in counseling, she became "engaged" and progressed to becoming "very vocal, very outgoing, [and] more social." At the time of the circuit court hearing, N.D. was doing "very well" and probably would not need "indefinite counseling." W.D. started counseling after being hospitalized twice for suicidal ideations. W.D. had made "significant progress" in counseling. He was doing better in school, participated in extracurricular activities, and expressed a desire to attend college. W.D. had told his counselor that he wanted to live permanently with his foster mother. S.D. had been diagnosed with an "adjustment disorder with a depressed mood." S.D.'s counselor testified that S.D. had "vacillate[d] in and out of functioning pretty well and then he'd have a couple of weeks where he presented as extremely depressed." His depressed behavior often was tied to his visits with father. S.D.'s counselor emphasized that he needed "stability of placement."

On September 4, 2018, the JDR court entered the permanency planning orders approving the goals of adoption for S.D. and N.D. and permanent foster care for W.D. The JDR court also denied father's motions for custody. On March 1, 2019, the JDR court entered the orders terminating father's parental rights to S.D. and N.D. Father appealed all of the JDR court's rulings.

At the circuit court hearing, the Department presented evidence that all the children had bonded well with their foster mother and wanted to stay in her care. W.D. was seventeen years old and had expressed his desire to be in permanent foster care in the same foster home. S.D. and N.D. were doing very well in foster care and were involved in several extracurricular activities. N.D. had become "very social" and was improving academically. S.D. still struggled, but was receiving the support that he needed. The Department explained that it sought termination of father's parental rights of N.D. and S.D. because father had not made "any

- 6 -

significant progress." He still could not control his anger and continued to deny the sexual abuse. After the Department presented its evidence, father moved to strike, which the circuit court denied.

Father testified that he had moved to South Carolina, but still worked in the Roanoke area. His wife continued to live in Roanoke. Father wanted the children to live with family, as opposed to being adopted. He proposed that the children live with his wife, and he would abide by a no contact order with N.D. and S.D. Father's wife confirmed that the children could live with her and that she would enforce any no contact order.

At the conclusion of all the evidence, father renewed his motion to strike, which the circuit court denied. After hearing the evidence and closing arguments, the circuit court found that the termination of father's parental rights under Code § 16.1-283(B) and (C)(2) was in the best interests of S.D. and N.D. It approved the foster care goal of adoption for S.D. and N.D. and found that permanent foster care was in W.D.'s best interests. The circuit court also denied the pending custody petitions. This appeal followed.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the evidence was insufficient to support the circuit court's termination of his parental rights to S.D. and N.D. and approval of the foster care goal of adoption.[8] He asserts that he was not provided reasonable and appropriate services and that the Department did not make reasonable efforts to reunite him and the children. He further contends that termination of his parental rights was not in the children's best interests.

On February 15, 2017, the JDR court adjudicated that the children were abused or neglected. The circuit court subsequently terminated father's parental rights to S.D. and N.D. under Code § 16.1-283(B) and (C)(2).

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The Department presented evidence that father had sexually abused N.D. and had neglected all three children by leaving them home alone while he worked nights. Furthermore, when the children entered foster care, the Department learned that father had neglected their medical and dental needs. Contrary to father's arguments, the abuse and neglect that they suffered was a "serious and substantial threat" to their health and development. The children required extensive counseling. Initially, N.D. was "closed off, very shy, [and] just very timid,"

---

[8] Father's first assignment of error is limited to the termination of his parental rights and the foster care goal of adoption for S.D. and N.D. Father did not assign error to the circuit court's approval of the foster care goal of permanent foster care for W.D.; therefore, we will not address it. We further note that during the circuit court hearing, father stated that he was "willing to agree for [W.D.] to be in permanent foster care."

but through counseling, she progressed to being more social and outgoing. S.D. suffered episodes of depression, which his counselor noted appeared to be tied to visits with father.

Contrary to father's arguments, the Department was not required to provide services to father. "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005). Nevertheless, the Department provided services to father, including referrals for a psychological and parenting capacity evaluation, anger management classes, counseling, and parenting classes. Father reluctantly participated in the services and never demonstrated that he could apply what he had learned. For example, as recently as a week before the circuit court hearing, father still could not control his anger at a meeting with the Department, and the meeting had to be cut short. Father's anger management skills had been a concern throughout the time that the children were in foster care and, despite the services provided, had not improved.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Id. at 270-71 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Farrell v. Warren County Dep't of Soc. Servs., 59 Va. App. 375, 425 (2012) (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017). With respect to the sexual abuse allegations, the Department presented evidence about a previous incident involving father and a

child, which resulted in a Level I finding of sexual abuse. Throughout this case, father denied abusing N.D. and never accepted any responsibility for the children being in foster care. The Department also presented evidence that father had had "power and control issues" for twenty-five years, and continued to demonstrate the same behavior while the children were in foster care. Dr. Mundy opined that father's prognosis for rehabilitation was "poor." Father's instructor for the anger management classes also expressed doubt about father's ability to implement the strategies learned and control his anger. Father's own counselor stated that he had been unable to apply the strategies provided to him and even medication had not alleviated father's anger.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). The Department presented evidence that S.D. and N.D. had bonded well with their foster mother. Based on the totality of the record, the circuit court did not err in terminating father's parental rights to S.D. and N.D. under Code § 16.1-283(B).[9]

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of

---

[9] With respect to father's challenge of the foster care goal of adoption for S.D. and N.D., "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we do not consider the additional question of whether the circuit court also erred in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>