COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


FAUQUIER COUNTY DEPARTMENT OF
  SOCIAL SERVICES

v.     Record No. 2490-10-4

BETHANEE RIDGEWAY
                                                                    OPINION BY
                                                         JUDGE SAM W. COLEMAN III
BETHANEE RIDGEWAY                                            DECEMBER 6, 2011

v.     Record No. 2550-10-4

FAUQUIER COUNTY DEPARTMENT OF
  SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                            Jeffrey W. Parker, Judge

            Robert F. Beard; Arthur von Keller IV, Guardian *ad litem* for the
            minor children, for Fauquier County Department of Social
            Services.

            Jennifer R. Moore (Fallon Myers & Marshall, LLP, on briefs), for
            Bethanee Ridgeway.


        In this consolidated appeal, Fauquier County Department of Social Services (the

Department) appeals the trial court's refusal to terminate the parental rights of Bethanee Ridgeway

(mother) to C.R., and mother appeals the trial court's termination of her parental rights to A.R.[1]

Mother argues that the trial court erred in concluding that she failed within a reasonable period of

_____

        [1] The trial court terminated mother's parental rights to her two oldest children, A.R. and
H.R., but refused to terminate her parental rights to her two youngest children, C.R. and D.R.
However, this appeal concerns only the rulings to terminate parental rights as to one child, A.R.,
while refusing to terminate parental rights of the younger sibling, C.R.

time to substantially remedy the conditions which brought A.R. into foster care and that termination of parental rights was in A.R.'s best interests because the trial court had insufficient evidence to make that determination. The Department argues that the trial court erred by (1) ruling that the Department failed to prove that pursuant to Code § 16.1-283(C)(2) mother had been unwilling or unable within a reasonable period of time, not to exceed twelve months, to remedy substantially the conditions which led to or required continuation of C.R.'s foster care placement, notwithstanding the reasonable and appropriate efforts of the Department; (2) failing to find that termination of parental rights was in the best interests of C.R.; (3) failing to find that C.R. was under the age of fourteen or otherwise not of the age of discretion; (4) denying the petition for the termination of parental rights to C.R.; and (5) ordering the return of custody of C.R. to mother.[2] We find no error, and affirm the decisions of the trial court to terminate mother's parental rights to A.R. and the refusal to terminate her parental rights as to C.R.

BACKGROUND

Mother has four children, A.R., H.R., C.R., and D.R. The Department initially became involved with the family in 2007, and on July 3, 2008, the Department removed the children and placed them in foster care. At the time of removal, A.R. was seven years old, H.R. was five years old, C.R. was two years old, and D.R. was one year old.

On August 7, 2008, mother signed a Service Plan Goal Agreement, which established fifteen goals for mother to accomplish in order for her to resume custody of her children. The Department established a foster care plan with the goals of mother obtaining safe and suitable

---

[2] In its opening brief, the Department also listed two questions presented, which restate the assignments of error. Effective July 1, 2010, Rule 5A:20(c) was revised to state that appellant's opening brief shall contain a "statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Pursuant to the revised rules, this Court considers only assignments of error and, as such, will not consider the questions presented.

housing, obtaining stable employment, maintaining regular contact with the social worker, participating in random drug screens, abstaining from the use of illegal substances, completing substance abuse, psychological, and parent-child evaluations, following the evaluator's recommendations, participating in visitations with her children in an approved setting, and demonstrating appropriate parenting skills.

Mother was able to complete and comply with some, but not all, of the requirements. She completed the substance abuse, psychological, and parent-child evaluations. She participated in counseling and parenting classes. Initially, she missed several visitations and left early from other visitations; however, her consistency with the visitations improved after the children had been in foster care for several months. In August 2008 she tested positive for cocaine and then refused five other drug screens until April 2009. In April 2009, she began attending Alcoholics Anonymous meetings and stopped using drugs and alcohol. At the time of trial, mother lived with her mother in a three-bedroom townhouse and relied on her mother for her financial needs. Although mother had sporadic employment after the children had entered foster care, she was unemployed at the time of trial. She testified that she hoped to obtain her GED and attend nursing school.

The children, especially the two eldest, have special needs. All the children had witnessed their father's physical and emotional abuse against their mother. As a result, A.R. demonstrated rude and disrespectful behavior toward her. The evidence also showed that A.R. had been sexually abused, as a result of which he exhibited and frequently engaged in explicit sexualized behavior.[3] As to C.R., the evidence showed he was exposed to some sexual attention from his brothers.

---

[3] H.R. also engaged in explicit sexualized behavior, but not to the extent of A.R.

Counselors witnessed mother's interactions and visitations with the children. Several of them testified as to mother's inability to adequately supervise and control her children, especially the older ones.

After three days of testimony and argument, the trial court terminated mother's parental rights to A.R. and H.R., but not to C.R. and D.R. [4] Mother appeals the trial court's ruling terminating her parental rights to A.R., and the Department appeals the trial court's denial of the termination of parental rights for C.R.

ANALYSIS

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

The Department sought termination of mother's parental rights based on Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

---

[4] The termination petitions as to H.R. and D.R. were resolved by the parties. Furthermore, the juvenile and domestic relations district court (the JDR court) terminated the father's parental rights to all four children and he did not appeal those rulings.

## Termination of parental rights of A.R.

Mother argues that the trial court erred in terminating her parental rights to A.R. We disagree.

Although mother met many of the Department's requirements, she failed to meet the housing requirement, the employment requirement, and the requirement that she demonstrate the ability to effectively parent her children and keep them safe and secure. The trial court did not place much weight on the housing requirement. At the time of the trial, mother lived with her mother and relied on her mother for her financial needs. The trial court found that the house was "adequate for the needs of not only Ms. Ridgeway and Mrs. Quatmann (her mother), but for at least one or two of the children, if custody were returned to mother."

The trial court also did not place much weight on mother's employment status. The trial court found that mother had had three jobs prior to trial, but was currently unemployed. Although the trial court stated that mother "needs to make further efforts to remedy" her employment situation, the trial court "acknowledges the current economic recession and high unemployment rates" and mother's "limited" skills.

In terminating mother's parental rights to her eldest son, the trial court placed the greatest weight on A.R.'s special needs and mother's inability to parent him. A.R. was nine years old at the time of the hearing. He had been sexually abused, and "exhibits sexually aggressive behavior and inappropriate sexual knowledge for a child of his age." While in foster care, A.R. went to counseling for his sexually aggressive behavior and generalized aggressive behavior. His counselor testified that he needs structure and consistency and that mother was unable to meet A.R.'s needs.

The trial court found that A.R.'s "needs are highly specialized and far beyond the capacity of Ms. Ridgeway or her mother to address." The counselors testified about mother's inability to control and discipline A.R. and manage his aggressive behavior.

Mother argues that the Department arranged visitation between the mother and all four children, and treated the children as a unit, as opposed to individuals. In so doing, mother contends the Department invited "chaos" and did not allow mother to demonstrate her parenting skills. However, there was testimony that despite mother's participation in counseling and parenting classes, she did not improve her parenting skills toward A.R. After the visitations, mother's counselor would discuss her concerns about the visit with mother, and together they would develop a plan for the next visitation. Mother, however, was unable to progress, and the same problems would recur.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court found that mother "is totally unable to address the needs of [A.R.]." The trial court noted that the visitations occurred in "an artificial environment," but emphasized that A.R. "will require continued therapeutic intervention and parenting abilities beyond the capability of Ms. Ridgeway." Substantial evidence exists on this record to support the trial court's finding of mother's inability to meet A.R.'s needs and that it was in the child's best interests that mother's parental rights be terminated.

Accordingly, the trial court did not err in terminating mother's parental rights to A.R.

<u>Denial of termination of parental rights of C.R.</u>[5]

The Department argues that the trial court erred by not terminating mother's parental

rights to C.R.  We disagree.

> In considering the matter before us, we must have a "respect for
> the natural bond between children and their natural parents.  The
> preservation of the family, and in particular the parent-child
> relationship, is an important goal for not only the parents but also
> government itself. . . . Statutes terminating the legal relationship
> between parent and child should be interpreted consistently with
> the governmental objective of preserving, when possible, the
> parent-child relationship."

<u>Richmond Dep't of Soc. Servs. v. L.P.</u>, 35 Va. App. 573, 580, 546 S.E.2d 749, 752-53 (2001)

(quoting <u>Weaver v. Roanoke Dep't of Human Res.</u>, 220 Va. 921, 926, 265 S.E.2d 692, 695

(1980)).

"'The termination of [residual] parental rights is a grave, drastic and irreversible action.'"

<u>Helen W. v. Fairfax Cnty. Dep't of Human Dev.</u>, 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29

(1991) (quoting <u>Lowe v. Dep't of Pub. Welfare of Richmond</u>, 231 Va. 277, 280, 343 S.E.2d 70,

72 (1986)).

As stated earlier, the concerns with mother focused on her housing situation, employment

situation, and her parenting skills.  Her housing situation and employment situation were the

same for all four children, and not a major concern for the trial court.[6]  Instead, the trial court's

---

[5] The Department contends the trial court erred by not finding that C.R. was under the
age of fourteen.  However, in closing argument, the Department stated twice that everyone
agreed that all four of the children were under the age of fourteen.  In addition, the final order
indicates the child's date of birth to prove that the child is under the age of fourteen.  Therefore,
we will not address this issue.

[6] At oral argument, the Department conceded that mother's failure to remedy her housing
and employment situations were not significant factors in the trial court's decision to terminate in
these cases.

focus as to all of the children was on mother's parenting skills. During closing argument, the trial court asked counsel,

> [W]ould it be reasonable for this Court to make an inference that Ms. Ridgeway is unable to parent children in general and that the kind of problems that have resulted with [A.R.] and [H.R.] will end up resulting with the younger boys and, therefore, she should be divested of custody of all of the children?

Mother's counsel responded that the trial court should not make that inference, and ultimately, the trial court agreed. In deciding the issue, the trial court grouped the older boys (A.R. and H.R.) together and the younger boys (C.R. and D.R.) together and focused on the behavior of the older boys. The trial court concluded, "[C.R.] and [D.R.] were presumably too young to be permanently impacted on or traumatized by the abusive actions of their father and present a far lesser challenge in parenting than do the two older children."

There was sufficient evidence for the trial court to conclude that mother was unable to manage A.R. and H.R. She could not learn adequate parenting skills to meet the special needs of those children. However, the trial court stated that it "did not receive evidence on how Ms. Ridgeway would parent less than all four children." The demands and needs of A.R. affected the mother's ability to parent the other children. Since the Department placed all four children with mother at one time, "a good deal of the mother's visitation time was spent 'managing the older boys.'" As a result, the trial court found that "there is not a sufficient factual basis on which this Court can appropriately analyze the mother's parenting skills as to the youngest two children." The trial court explained that "[t]hese two children [C.R. and D.R.] are substantially younger than H.R. and A.R., and if removed from their sibling's negative influence, Ms. Ridgway [sic] and Mrs. Quatmann would neither be outnumbered nor overwhelmed by the management of the older boys' behavior." The trial court concluded that "there was nothing to

suggest in the [trial] Court's view that they [mother and maternal grandmother] could not properly supervise C.R. and D.R., separate from their brothers."

By terminating the mother's parental rights to A.R., mother could focus her attention on the younger children. The trial court gave mother the opportunity to work with the counselors and her younger children in order to improve her ability to parent the younger children. By ruling in such a manner, the trial court recognized the importance of preserving the parent-child relationship and protecting the child's best interests.

Accordingly, the trial court did not err when it denied the Department's request to terminate mother's parental rights of C.R.

<u>Unappealed foster care plan for C.R.</u>

The Department submitted to the JDR court a foster care plan for C.R. and a related petition for termination of mother's parental rights. The JDR court terminated mother's parental rights and approved the foster care plan with the goal of adoption. Mother appealed the decision regarding the termination of parental rights, but not the foster care plan. The trial court did not terminate mother's parental rights to C.R. and ordered that custody of C.R. be transferred from the Department to mother. The Department argues that the trial court erred in returning custody of C.R. to mother because mother had not appealed the foster care plan and custody was not before the trial court. The Department contends the trial court exceeded its authority when it awarded custody of C.R. to mother because according to the permanency planning order entered by the JDR court, the Department had custody of C.R.

As required by statute, the Department filed a foster care plan in the JDR court prior to filing a petition for termination of parental rights. <u>See</u> Code § 16.1-283(A) ("No petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as

- 9 -

being in the best interests of the child.").  At trial, the Department had different burdens of proof with the foster care plan and the termination of parental rights.

> A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision.  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266 & n.3, 616 S.E.2d 765, 769-70 & n.3 (2005).  For this reason, it necessarily follows that a termination decision, if final and unappealed, moots any justiciable contest over a prior decision to approve DSS's foster care plan recommendations.

Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240-41, 629 S.E.2d 721, 722 (2006).  Here, the trial court made a final decision regarding the termination of parental rights, which then made the JDR court's ruling regarding the foster care plan moot.

Furthermore, by ruling on the termination of parental rights, the trial court had jurisdiction over the custody issue, since custody was incidental to the termination of parental rights decision.

> Nothing contained in this law shall deprive any other court of the concurrent jurisdiction to determine the custody of children upon a writ of habeas corpus under the law, or to determine the custody, guardianship, visitation or support of children when such custody, guardianship, visitation or support is incidental to the determination of causes pending in such courts, nor deprive a circuit court of jurisdiction to determine spousal support in a suit for separate maintenance.

Code § 16.1-244(A).

The General Assembly contemplated that once a trial court terminated a person's parental rights, the next step was to determine who would have custody of the child.  "Any order terminating residual parental rights shall be accompanied by an order continuing or granting custody to a local board of social services, to a licensed child-placing agency or the granting of custody or guardianship to a relative or other interested individual . . . ."  Code § 16.1-283(A).  It follows that once a trial court denies the Department's petition for termination of parental rights,

- 10 -

the trial court has to determine custody of the child. The issue of custody is incidental to a termination of parental rights case. In this case, the trial court determined that it was in the best interest of C.R. to be in his mother's custody.

The trial court did not err in returning C.R. to his mother's custody upon the denial of the Department's petition to terminate parental rights.

## CONCLUSION

For the foregoing reasons, the trial court's rulings are affirmed.

<u>Affirmed.</u>