COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Annunziata

ROBERT EARL SMITH

v.     Record No. 0883-18-1

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 11, 2018

CITY OF NORFOLK DEPARTMENT
 OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(Elizabeth M. Wood, on brief), for appellant.

(Bernard Pishko; Erikka M. Massie; Michael E. Grey, Guardian *ad litem* for the minor children; Office of the City Attorney; Grey & Arsenault, P.C., on brief), for appellee.

Robert Earl Smith (father) appeals the orders terminating his parental rights to his children. Father argues that the circuit court erred in finding that it was in the best interests of the children to terminate his parental rights because father's "incarceration was the only thing advanced by the Department as the reason he should have his children taken away from him." Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

Father and Latonya Shearn (mother) are the biological parents to two children who are the subject of this appeal. In April 2015, father was incarcerated, and the children were living with their paternal grandmother.[1] On April 27, 2015, the Department received a referral that the younger child, who was eleven years old at the time, was being physically abused by the grandmother's paramour. When the social worker went to the home, the child was aggressive and defiant. The older child, who was twelve years old at the time, also had aggressive behaviors and had been discharged from a group home and was on a GPS monitor. The family had received services in the past; however, the grandmother terminated those services. The Department recommended putting the services back in the home, and the grandmother agreed to the services. The Department originally sought a protective order from the City of Norfolk Juvenile and Domestic Relations District Court (the JDR court), but on June 22, 2015, the JDR court ordered the children into foster care. At the time of the removal, the grandmother told the Department that father was a convicted sex offender and she did not know where he lived because he had not been in contact with the children.

The Department placed the older child in a group home where he received group therapy and individual therapy, as well as individualized education program (IEP) services through school. The Department placed the younger child in a group home and several other placements until late August 2015, when he went to an acute care residential placement and received group therapy, individual therapy, recreation therapy, medical management, and IEP services through school. The Department also provided services, such as parent support services and a mental health skill builder, to the grandmother.

On July 21, 2015, the JDR court adjudicated that the children were abused or neglected, and on September 9, 2015, the JDR court entered the disposition order.

---

[1] Mother was not involved in the children's lives.

The first time that the Department had contact with father was in March 2016, when he and his sister came to the Department to report an incident that had occurred with the older child in the group home. The Department asked father if he would be interested in participating in services in order to be a placement option for the children, but he declined because he was going to truck driving school. In April 2016, father was arrested and incarcerated, and on April 26, 2017, the Circuit Court for the City of Virginia Beach sentenced him to a total of three years and six months for charges of abduction and violation of a protective order.

After the incident in the group home in March 2016, the older child was placed in a foster home. However, he had problems and was placed in another foster home. Due to increased behavioral issues, the Department removed the child in August 2016, and placed him in a behavioral health center, where he stayed until June 2017. Since that time, the older child has been living in a foster home, where he has done "very well" and has improved his behavior. The younger child also struggled with foster care placements; however, in February 2016, the Department placed him in a foster home, where he stayed until February 2018.

In July 2016, father was transported to a foster care review hearing in the JDR court. At that time, he told the JDR court that he did not wish to be transported to any further hearings. He later explained to the circuit court that he did not wish to go to future hearings while he was incarcerated because he was awakened at 2:00 a.m., was not transported until 7:00 or 8:00 a.m., and then sat in shackles or handcuffs until his hearing, which could have been 2:00 p.m.

After receiving a parental capacity assessment for the grandmother, the Department determined that she would not be able to meet the children's increased behavioral and mental health needs. As a result, the Department recommended that the foster care goal change to adoption, which the JDR court approved on October 5, 2016. The JDR court terminated father's parental rights on December 6, 2017, and father appealed to the circuit court.

- 3 -

The parties appeared before the circuit court on May 21, 2018. The Department presented evidence that father never visited the children while they were in foster care, even though he was not incarcerated the entire time. The Department wrote to father after the JDR court terminated his parental rights to update him on the children and encourage him to participate in services while he was incarcerated. In response, father sent a letter to the social worker and letters to each of the children. Father did not contact the Department again after he sent those letters.

The Department also submitted copies of father's conviction orders, including an order entered October 4, 2013, which indicated that father was convicted of indecent liberties with a child. The Department also provided a stipulation of facts from the criminal case for the charge of indecent liberties to prove that father had lived with the victim.

Father testified that his expected release date for his most recent convictions was December 10, 2018. Father stated that upon his release from incarceration, he planned to live with his sister and her daughter. He also hoped to complete the truck driving program, so that he could provide for his family. Father testified that he cared for the children while they were babies; however, in 2004, he was arrested in Pennsylvania and had been incarcerated for ten years. He was released in 2013, but arrested again in 2016. He acknowledged that the last time that he had seen the oldest child was in March 2016 after the incident at the group home. Father testified that he wanted to be involved in his children's lives and did not want to have his parental rights terminated.

After hearing all of the evidence and argument, the circuit court found that it was in the best interests of the children to terminate father's parental rights under Code § 16.1-283(C)(1), (C)(2), and (E)(iii). This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558, 811 S.E.2d 835, 840-41 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

Father argues that the circuit court erred in terminating his parental rights and asserts that his incarceration was the reason for his termination. In his brief, father challenges the circuit court's finding under Code § 16.1-283(C)(2), but he does not challenge the circuit court's rulings under Code § 16.1-283(C)(1) or (E)(iii). Father's failure to challenge the circuit court's termination decision under Code § 16.1-283(C)(1) or (E)(iii) renders moot his claims regarding termination pursuant to Code § 16.1-283(C)(2). Even if we were to agree with father regarding the sufficiency of the evidence to support termination pursuant to Code § 16.1-283(C)(2), his parental rights would remain terminated as a result of the circuit court's unchallenged decision to terminate his parental rights pursuant to Code § 16.1-283(C)(1) and (E)(iii).

Terminations under Code § 16.1-283(C)(1), (C)(2), and (E) provide distinct, "individual bases upon which a petitioner may seek to terminate residual parental rights." City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003). "[I]n 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's

decision on that issue.'" Johnson v. Commonwealth, 45 Va. App. 113, 116, 609 S.E.2d 58, 60

(2005) (quoting United States v. Hatchett, 245 F.3d 625, 644-45 (7th Cir. 2001)).  Because the

circuit court terminated father's parental rights based upon Code § 16.1-283(C)(1) and Code

§ 16.1-283(E)(iii), those alternate holdings make it unnecessary for the Court to examine father's

arguments regarding termination under Code § 16.1-283(C)(2).  See Fields v. Dinwiddie Cty.

Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.