COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Malveaux and Senior Judge Frank

BRANDON SCOTT LAMBERT

MEMORANDUM OPINION*

v.      Record No. 1572-19-3                              PER CURIAM
                                                         MARCH 10, 2020

HARRISONBURG/ROCKINGHAM
 SOCIAL SERVICES DISTRICT


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(Stephen R. Sofinski, on brief), for appellant. Appellant submitting
on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Hallet M.
Culbreth, Guardian *ad litem* for the minor child, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Brandon Scott Lambert (father) appeals the child protective order entered against him.

Father argues that the circuit court erred by granting the child protective order that "required sight

and sound visitation" because the Harrisonburg/Rockingham Social Services District (the

Department) did not prove by a preponderance of the evidence that "father committed any acts of

abuse against the minor child." Upon reviewing the record and briefs of the parties, we conclude

that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Father and Shantell Jackson (mother) are the biological parents to X., the child who is the subject of this appeal. In September 2018, the Department received a report alleging that mother was using drugs, had an unsafe living environment, and was not supervising her four children, including X. Mother submitted to a drug test and tested positive for amphetamines and methamphetamine. Nine days later, mother submitted to another drug test and tested positive for marijuana.

In November 2018, the Department received a report that no one was home to get X. off the bus[2] and that mother was pregnant and using drugs. The Department had difficulty contacting mother, and when it did speak with her, she was not cooperative.

In January 2019, the Department received a report of a suspicious death at mother's house and went to mother's house to check on X.[3] Mother was not cooperative. The Department subsequently learned that X. was staying with his paternal great uncle, Ricky Davis, and his wife, Cathy, who had been caring for X. regularly on weekends, summer breaks, and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] X. was four years old at the time.

[3] X. was in mother's custody, but mother's other children were living with relatives.

school holidays. Due to concerns about mother's drug use and her lack of cooperation, the Department sought a child protective order and requested that X. continue to reside with the Davises. Father had been incarcerated since September 25, 2018, shortly after the Department first became involved with mother and X.

On January 28, 2019, the Rockingham County Juvenile and Domestic Relations District Court (the JDR court) entered an *ex parte* preliminary child protective order. On February 4, 2019, the JDR court held a hearing and entered a preliminary child protective order. On February 27, 2019, the JDR court adjudicated that X. was abused or neglected. On April 3, 2019, the JDR court entered a child protective order. The JDR court ordered that the parents have no unsupervised contact with X., refrain from possessing or using illegal drugs, and cooperate with random drug screens. The JDR court awarded *pendente lite* legal and physical custody of X. to the Davises. Father appealed the JDR court's rulings.[4]

On August 23, 2019, the parties appeared before the circuit court. Father presented evidence that while the Department was investigating mother between September 2018 and January 2019, father was incarcerated and not involved in the incidents leading to the child's removal from mother's custody.

When X. was less than two years old, father and X. lived with the Davises for approximately one year.[5] Mr. Davis testified that while father was living with them, approximately $1,000 went missing. Father started acting paranoid and said that he was seeing things in the woods. Father broke the bathroom mirror because he thought there were hidden

---

[4] Mother did not appeal the JDR court's orders.

[5] Mother was in jail when father and X. first came to live with the Davises.

cameras watching him. At one point, father threatened to shoot X. because he thought X. had taken his cell phone.[6]

The Davises advised father that he had to leave their house because they "couldn't . . . put up with anymore." Mrs. Davis contacted mother and arranged for her to care for X. Father was upset. After father and his friend packed up his items, there was no room for father's dog in the car. Mr. Davis told father to leave the dog and that they will "work it out later." Father did not want the Davises to take the dog, so he sliced the dog's neck with a knife, pointed the knife at Mr. Davis, and said "that's what you get for taking my son." Mr. Davis called 911, and father and his friend left.

Father admitted that he had been convicted of possession of methamphetamine in 2006 and four probation violations thereafter. Father also acknowledged that he had been convicted of public swearing, assault, and several counts of public intoxication. At a hearing on August 9, 2018, father pleaded guilty and was convicted of possession of methamphetamine. The circuit court had sentenced him to five years in prison and suspended the entire sentence, except for the time served. The circuit court placed him on supervised probation. On August 30, 2018, the circuit court issued a capias after receiving a report that father had violated the conditions of his probation; father was arrested on September 25, 2018. In October 2018, the circuit court found that father had violated the terms and conditions of his probation and revoked his entire suspended sentence. Father has been incarcerated since September 25, 2018.

When asked whether he had an anger problem, father responded that it was "not like it used to be ten years ago," but "[i]t's a work in progress." Father admitted that he had concerns about his mental health, but refused to take any medication. He stated that he had "done all [he]

---

[6] Mr. Davis estimated that X. was sixteen months old at the time.

can to help [himself]." Father testified that he had asked two judges, a Commonwealth's attorney, and two defense lawyers "for mental help . . . and was denied."

After hearing all of the evidence and argument, the circuit court found that X. was abused and neglected. The circuit court found that it was in the child's best interest to enter the child protective order, which included a provision that father's "contact with the child, if any, shall be sight and sound supervised." This appeal followed.

ANALYSIS

Father argues that the circuit court erred by entering the child protective order against him. He contends that the Department failed to prove by a preponderance of the evidence that he "committed acts of abuse toward the minor child that would warrant or substantiate a need for 'no unsupervised contact' with the child."

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)). "In matters of a child's welfare, [circuit] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "This Court presumes that the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. (quoting Logan, 13 Va. App. at 128).

Father argues that the circuit court erred in entering the child protective order against him because it was mother's conduct, not his, that led to the Department filing the petition seeking the child protective order. Here, the circuit court found that the child was abused or neglected

- 5 -

based on mother's actions and found that father's incarceration prevented him from caring for the child. Once a child is found to be abused or neglected, Code § 16.1-278.2 provides several options for a court "to protect the welfare of the child," including prohibiting or limiting contact "as the court deems appropriate between the child and his parent . . . whose presence tends to endanger the child's life, health or normal development." Code § 16.1-278.2(A)(3).

The circuit court found that father had "some pretty serious mental health issues" that he needed to address. The circuit court further found that father had "utilized illegal substances to either self-medicate those [mental health] issues or as part of some sort of addiction." The circuit court expressed concern about father's "erratic" behavior when he lived with the Davises. The circuit court explained that father's "behaviors . . . were not necessarily consistent with the stability and appropriateness of the household, regarding [X.]." The circuit court was especially concerned about father's "absolutely appalling" conduct with his dog and his "inclination" to kill something he loved when he was "in the midst of a mental health episode [and] . . . felt like things were being taken away from [him]." After considering all of the evidence, the circuit court found that it was "appropriate to grant the protective order."

The record supports the circuit court's judgment that a protective order limiting father's contact with X. was appropriate to protect X.'s welfare. Code § 16.1-278.2 does not limit a court from entering a protective order to those parents whose actions precipitated the finding of abuse and neglect. Rather, Code § 16.1-278.2(A) provides a court with several options to "protect the welfare of the child" who was found to be abused or neglected. One option is to prohibit or limit a parent's contact with a child when the parent's presence "tends to endanger the child's life, health or normal development." Code § 16.1-278.2(A)(3). Here, the circuit court found that father's untreated mental health situation endangered X., especially considering father's actions toward his dog after the Davises asked him to leave. Father testified that he did better and felt

better when he was with X., but the circuit court found that it was "unfair for a child to carry the responsibility of maintaining the stability of . . . [father's] behavior."

"When the trial court acts as a factfinder, as it did in this case, it retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Farrell, 59 Va. App. at 421 (quoting Farley v. Farley, 9 Va. App. 326, 328 (1990)).

Considering the totality of the record, the circuit court did not err in granting the child protective order against father.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.