COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, White and Retired Judge Frank[*]

MARTIN MAURICE YATES

v.      Record No. 1206-22-2

BUCKINGHAM COUNTY DEPARTMENT
   OF SOCIAL SERVICES

MEMORANDUM OPINION[**]
PER CURIAM
MAY 30, 2023

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

(Matthew J. Friedman; Elder, Watkins & Friedman, P.C., on brief),
for appellant.  Appellant submitting on brief.

(E.M. Wright, Jr.; M. Brooke Teefey, Guardian ad litem for the
minor child; Teefey Law, P.C., on brief), for appellee.  Appellee and
Guardian ad litem submitting on brief.

Martin Maurice Yates (father) appeals the circuit court's orders terminating his parental

rights under Code § 16.1-283(B) and (E)(iv) and approving the foster care goal of adoption.  Father

argues that the circuit court erred by finding that the termination of his parental rights was in the

child's best interests.  He further asserts that the circuit court erred in finding that the Buckingham

County Department of Social Services (the Department) had proven by clear and convincing

evidence that he "had been unable or unwilling within a reasonable period of time not to exceed 12

months from the date of placement in foster care to remedy substantially the conditions which led to

or required continuation of his child's placement in foster care, notwithstanding the rehabilitative

efforts of the agencies involved."  Finally, father contends that the circuit court erred in finding that

[*] Retired Judge Frank took part in the consideration of this case by designation pursuant to Code § 17.1-400(D).

[**] This opinion is not designated for publication.  *See* Code § 17.1-413.

he "subjected the child to aggravated circumstances." After reviewing the record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the circuit court's judgment.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party.

Father and Loretta Lynn Carr (mother) are the biological parents to the child who is the subject of this appeal.[2] The child was born prematurely in March 2021 and spent the first "59 to 69" days in the hospital. The Infant & Toddler Connection (I&TC) provided early intervention services to the family, including physical and speech therapy to the child.

In early November 2021, a therapist saw a burn mark on the then-seven-month-old child's right lower back. The child's grandmother told the therapist that the child had rolled into a space heater in father's office in the "shed building" where he lived[3]; however, I&TC had documented

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother also appealed the circuit court's orders terminating her parental rights and approving the foster care goal of adoption. *See Carr v. Buckingham Cnty. Dep't of Soc. Servs.*, Record No. 1186-22-2.

[3] The shed was on the same property as mother's house.

that the child needed assistance to roll over. The grandmother also told the therapist that a doctor had seen the wound and prescribed medicine.[4]

In addition to noting the child's burns, the therapist documented the living conditions of mother's home. Her house had fleas, which prevented the therapist from working with the child on the floor. The therapist worked with the child in father's shed once in November 2021. The therapist noted that there were bees and ladybugs that "continuously needed to be swatted away" while she worked with the child. Father did not "engage" in the therapy and retrieved toys for the child "reluctantly." When asked how I&TC could support the family, father responded by saying that "he just needed money."

In early December 2021, mother took the child to the pediatrician for a "regularly scheduled appointment." The pediatrician noticed a "healing burn" on the child's buttocks and lower back and sent the child to the hospital for treatment. The hospital personnel determined that the child had burn marks, in "various stages of healing," on her back, hip, and buttocks, as well as a subdural hematoma.

According to medical personnel, the child's injuries were "not fresh" and "not consistent" with diaper rash as mother claimed. The doctors suspected that the child was physically abused because she could not "crawl over to something hot and burn herself accidentally," and the location of the burn was "an atypical location for an accidental burn." After receiving conflicting reports about the causes of the injuries and threats to leave, the hospital reported the incident to the Department.

The Department spoke with mother and convinced her to allow the hospital to conduct additional tests. Mother initially told hospital personnel and the Department that she and father did

---

[4] When asked about the prescription, the grandmother showed the therapist an "empty tube of Vaseline"; she also said that there was a "cream," but she did not know where it was.

not own a space heater and the child's injuries were a result of diaper rash. She next reported that an uncle used a "diaper brand that burned [the] child around Thanksgiving." Then, she claimed that a diaper that she placed on the child caused a "chemical burn." Next, she blamed father and her brother for the child's burns, and then, she said that father burned the child recently and assaulted her. Finally, she told the Department that she was in jail when the child was burned.

In addition to the burns, the hospital documented its concerns that the child was developmentally delayed and underweight. Although the child was eight months old, she functioned developmentally as a two or three month old. The child was "unable to hold herself upright, unable to hold her head up, unable to crawl, unable to roll both ways, and the back of her head was extremely flat." In addition, the child's weight was fluctuating and in the third percentile for her age.

During its investigation, the Department discovered that child protective services from several localities had been involved with one or both parents since 2006. Father had three children from a previous relationship, and mother had five children from a previous relationship. Together, father and mother had four children, including the child who is the subject of this appeal.[5] The parents did not have custody of any of their children.

Considering the parents' history with child protective services, the severity of the child's injuries, the parents' inability to explain how the injuries occurred, the child's developmental delays, and the lack of viable relative placement options, the Department petitioned for removal of the child. The Buckingham County Juvenile and Domestic Relations District Court (the JDR court) granted the Department's petition and entered emergency and preliminary removal orders. The JDR court subsequently adjudicated that the child was abused or neglected and prohibited the

---

[5] One of the parents' children died at 25 days old of Sudden Infant Death Syndrome (SIDS).

parents from having any contact with her. On February 15, 2022, the JDR court terminated father's parental rights and approved the foster care goal of adoption. Father appealed the JDR court's rulings to the circuit court. After the JDR court hearing, the Department made a disposition of "Founded, level 1 for medical neglect" against father.[6]

At the circuit court hearing, the Department presented evidence, including photographs, of the child's burns. Dr. Jennifer Andrews, an expert in child abuse, saw the child in the emergency room in December 2021 and testified about her injuries which Dr. Andrews determined were burns. Dr. Andrews noted that the burns were "irregular" in shape and located in an area that clothing or diapers typically protect. Further, because the child was "not independently mobile," she could not have sustained the burns on her own; therefore, Dr. Andrews opined that "the absence of a history of burn [was] indicative of physical abuse." In addition, the location of the burns "on two separate planes," her left buttock and her right lower back and right hip, suggested that she was burned twice. Dr. Andrews testified that the burns the child sustained would have caused her "a lot of pain."

Dr. Andrews recalled that the parents presented conflicting accounts of the child's injuries. Father reported that the child had been burned and had received medical treatment, but mother denied that the child's injuries were burns. Mother claimed the child had diaper rash. Considering the conflicting stories about whether the child had received medical treatment, Dr. Andrews opined that it was "medically indeterminate" whether the child had been medically neglected. Nonetheless, the burns suggested that the child had been physically abused.

In addition to the burns, medical providers were concerned about the child's development. Dr. Andrews opined that the child suffered from nutritional neglect because the child was "small," but made "improvements in her growth" after being placed in foster care, suggesting that she was

_____

[6] The Department determined the allegations of physical abuse were "unfounded" against father.

not eating enough before her hospitalization. At a follow-up appointment two weeks after the December hospital visit, the child's burns were healing, and she had gained a "substantial amount" of weight. The child also "had made over a month of advancement with her development." At the time of the circuit court hearing, the child was "thriving" in foster care; she was walking, climbing, talking, and holding a cup.

At trial, father admitted to accidentally burning the child with the space heater in his office. He acknowledged he had not taken her to the hospital immediately because he was worried that she "could be taken away." Father claimed that he fell asleep, and the child, who was in a pack and play, rolled too close to the heater. When he awoke the next morning, he noticed that she had been burned.

Mother allegedly scheduled a telehealth appointment for the child after she discovered the burns but admitted that she initially thought the mark was diaper rash. She claimed that she "found out during the telemed visit" that father burned the child. Mother and father testified that the telehealth provider gave mother a prescription for the burns, and mother took the child to a follow-up appointment with a pediatrician in December 2021. When mother took the child back to the doctor in December, father thought the burn was "getting better."

Father claimed that the child was "healthy," "doing pushups," and had "only lost a little bit of weight." According to mother, the child had experienced "problems gaining weight ever since she was born." Mother explained that doctors had been "monitoring" the child's weight and told her to "fortify her formula" by adding "vitamin drops . . . and a bunch of other supplements to help her gain weight," which mother said she did.

Father refused to provide his current address. Father testified that the Department did not provide him with any services or opportunities to visit with the child. The Department explained that it offered him no services because of "the aggravated circumstances and severity of the abuse

and neglect." The Department clarified that the aggravated circumstances included not only the severity of the burns, but the failure to seek treatment.

After hearing all the evidence and arguments, the circuit court found "a lot of confusion" and "contradiction" in the parents' testimony. Noting the contradiction concerning the child's ability to roll over on her own, the circuit court questioned why anyone would place a portable heater so close to such a young child if she could have rolled over and burned herself. The circuit court was particularly troubled by photographs showing "a horrible looking blister that's probably going to be a disfigurement." After finding that father had "an inadequate home setting and the mother doesn't seem to have much better," the circuit court also found that the child's "lack of nourishment" contributed to her "lack of development." Considering the "burns, apparent neglect, [and] lack of nourishment," the circuit court found that it was in the child's best interests to terminate father's parental rights. The circuit court terminated father's parental rights under Code § 16.1-283(B) and (E)(iv) and approved the foster care goal of adoption. Father appeals.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

After hearing all of the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (E)(iv). Father argues on appeal that the evidence

was insufficient to support the termination under Code § 16.1-283(C)(2) and (E)(iv); however, the circuit court did not terminate his parental rights under Code § 16.1-283(C)(2). Father presents no challenge to the sufficiency of the evidence to support the termination under Code § 16.1-283(B). Father's failure to challenge the alternate basis for the circuit court's termination decision renders moot his claims regarding termination under Code § 16.1-283(E)(iv) because even if we agreed with father regarding the sufficiency of the evidence to support termination under Code § 16.1-283(E)(iv), his parental rights would remain terminated as a result of the trial court's unchallenged decision to terminate his parental rights under Code § 16.1-283(B). Furthermore, issues not properly raised in father's assignments of error will not be considered. Rule 5A:20.

Terminations under Code § 16.1-283(B) and (E)(iv) provide distinct, "individual bases upon which a petitioner may seek to terminate residual parental rights." *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003). "[I]n 'situations in which there [are] one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'" *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)). "That said, we still must satisfy ourselves that the alternative holding is indeed one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the trial court's decision." *Id.* at 117. "But, in making that decision, we do not examine the underlying merits of the alternative holding—for that is the very thing being waived by the appellant as a result of his failure to raise the point on appeal." *Id.*; *see also Ferguson v. Stokes*, 287 Va. 446, 452-53 (2014); *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 422 (2012).

In addition to Code § 16.1-283(E)(iv), the circuit court terminated father's parental rights under Code § 16.1-283(B), which states a parent's parental rights may be terminated if:

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Father admitted that he burned the child when he placed a portable heater too close to her pack and play and then did not seek medical attention for her burns because he was worried that she "could be taken away." The circuit court found that accepting father's version of events as true led to the conclusion that he had placed the child in "a very extreme situation of danger and peril." The circuit court further noted that no one sought immediate medical attention for the child, who sustained "a horrible looking blister that's probably going to be a disfigurement."

The circuit court heard evidence that following the injury to the child, a therapist assigned to the family determined that the father did not engage in the home therapy and reluctantly interacted with the child. When asked how the agency could help the family, the father replied that he just needed money.

After finding that father's shed was "an inadequate home setting," the circuit court concluded that the child's environment and "lack of nourishment" "impeded" her development. The Department presented evidence that the child was underweight and developmentally delayed when she entered foster care, yet father claimed that the child was "doing pushups" and "healthy." He failed to recognize the child's condition. Within two weeks of her foster care placement, she had gained "a substantial amount" of weight and progressed developmentally. At the time of the circuit court hearing, the guardian ad litem reported that the child was "thriving" in foster care.

The trial court properly considered the father's demeanor presented at trial. The father was argumentative, non-responsive, and disrespectful. The trial court found remarkable that the father refused to give his address. The trial court heard testimony from the father that the child was healthy and strong despite expert testimony to the contrary.

After considering the totality of the circumstances, the circuit court found that it was in the child's best interests to terminate father's parental rights. "Without reviewing the correctness of the circuit court's determination, we are satisfied that, if correct," father's parental rights could have been terminated under Code § 16.1-283(B). *Ferguson*, 287 Va. at 453. "Accordingly, this ground forms a separate and independent basis to affirm the circuit court's ruling and we will not reverse it." *Id.*

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed*.