UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, AtLee and Malveaux
Argued by videoconference


ALLAN JOHNSON, SR.

                                           MEMORANDUM OPINION[*] BY
v.       Record No. 0756-23-2          JUDGE RICHARD Y. ATLEE, JR.
                                             MAY 21, 2024

HENRICO DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Kevin Purnell (Kevin D. Purnell, PLLC, on brief), for appellant.

Karen E. Dottore, Assistant County Attorney (Andrew R. Newby,
County Attorney; L. Wendell Allen, Jr., Guardian ad litem for the
minor children; Law Office of L. Wendell Allen, PLLC, on brief),
for appellee.


Allan Johnson, Sr. appeals the circuit court's orders terminating his parental rights to his two

sons, A.J. and D.J.,[1] under Code § 16.1-283(C)(2).  With respect to D.J., Johnson asserts that,

because D.J. was removed immediately after his birth, Johnson did not fail to remedy the conditions

resulting in his newborn son's removal.  With respect to A.J., Johnson maintains that the evidence

was insufficient to prove that he failed to remedy the conditions resulting in A.J.'s foster care

placement within a reasonable time.  Johnson also asserts that termination of his parental rights was

not in the children's best interests.  For the following reasons, we affirm the circuit court's

judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Court refers to the minor children by their initials to protect their privacy.

"[W]e view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department." *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

The Henrico Department of Social Services ("HDSS") first became involved with Johnson in February 2018 after health care providers treated then five-month-old A.J. for facial bruises. A.J. was removed and placed initially with family; however, when that placement failed, he was transferred to foster parents. After Johnson punched a hole in the wall during a family planning meeting, HDSS referred him to anger management classes. Johnson refused to attend the anger management classes. Additionally, he attended only three supervised visits with A.J. between July 2018 and November 2018. In late December 2018, Johnson tested positive for marijuana use.

In 2019, Johnson continued to miss visits with A.J., participating in only four of twelve scheduled visits between November 2018 and January 2019. In June 2019, D.J. was born. HDSS immediately removed him from Johnson and his wife's (the children's mother) custody, asserting that he was "at risk of abuse" because his parents had made "little progress" in remedying the conditions that led to A.J.'s removal. HDSS noted that Johnson had not taken advantage of the services offered, participated satisfactorily in visitation, or secured stable housing. It also cited Johnson's anxiety disorder, marijuana use, and "inappropriate conduct" toward the parenting class

---

[2] The record in this case is sealed. Nevertheless, this appeal necessitates unsealing limited portions of the record, including factual findings, to resolve the issues Johnson has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

instructor. HDSS noted that, despite Johnson's "outbursts" of verbal and physical violence, he had refused anxiety counseling and had not enrolled in an anger management program.

Following D.J.'s removal, he was placed with A.J.'s foster parents. By that time, A.J. had been in foster care for over a year. In July 2019, HDSS changed the goal for A.J. from return home to adoption, citing his parents' "minimal progress towards goal achievement," the extended period A.J. had been in foster care, and the lack of a relative placement option. Between July 2018 and April 2020, Johnson and his wife had lived "[a]t least two to three places."

In late June 2019, Johnson underwent a parental and psychological evaluation. That evaluation revealed possible childhood trauma and recommended that Johnson receive individual counseling to manage his mood and implement greater impulse control. Although Johnson attended an appointment with mental health services, no case was opened because Johnson denied needing such services.

Between April and July 2020, Johnson ignored attempts to engage him in anger management classes and had attended only three visits with the children in three months. Nevertheless, Johnson was working 60 hours a week. Social worker Amanda Swindle worked with the Johnsons between July 2020 and the initial termination hearing in March 2021. By that time, A.J. was nearly 4 years old and D.J. was approximately 18 months old. Both were thriving in their foster home and were "very happy" and "bonded as . . . sibling[s]." Johnson and his wife were living in a one-bedroom motel that was too small to accommodate two children.

Between November 2020 and January 2021, all three of Johnson's urine screens tested positive for THC. When Swindle informed Johnson that marijuana use was a barrier to visitation and reunification, he stated that he used it to cope with stress. HDSS recommended mental health and substance abuse counseling. Approximately one month before the March 2021 termination hearing, Johnson began receiving mental health counseling, but did not attend his appointments

consistently. Swindle agreed that Johnson had a strong work ethic and loved his children; nevertheless, he lacked the skills necessary to parent them. She testified that Johnson's continued marijuana use, his failure to receive mental health treatment, and his lack of stable housing were obstacles to returning the children home.

Parenting coach Arthur Johnson ("Arthur") testified on Johnson's behalf. Arthur began working with Johnson in October 2020 and helped him process his childhood trauma and manage his anger. Arthur provided Johnson guidance on appropriate discipline for A.J., as well as managing Johnson's finances. He also offered Johnson stress management techniques to help him avoid using marijuana. Arthur testified that Johnson was receptive to coaching.

After the March hearing, Johnson argued that termination of his parental rights was not justified under Code § 16.1-283(C) because he had "substantially corrected or eliminated the concerns raised by the [H]DSS" in connection with A.J. and that he had "made reasonable and continued efforts to address additional concerns . . . presented" since D.J.'s birth. He also maintained that D.J.'s removal was unjustified. Johnson stressed that his wife's drug tests were negative during her pregnancy and that HDSS had delayed in providing him "a trauma-based approach parenting coach," despite the 2019 assessment revealing his extensive history of childhood trauma. He emphasized that, even though "trauma-based approach individual counseling" did not begin until October 2020, it had helped him "address the issues" so that he could meet HDSS's goals within a reasonable time. Johnson asserted that termination of his parental rights was "premature" with respect to A.J. and unlawful with respect to D.J.

On May 6, 2021, the circuit court issued an opinion letter declining to terminate Johnson's parental rights at that time. The court noted that no criminal charges had arisen from A.J.'s injuries and that D.J. was removed "despite being born healthy with no issues." It found that both parents had "special needs" based on their history of trauma, "limited financial means," and "lower

cognitive abilities." The circuit court ruled that, despite Johnson's need for additional "guidance and instruction," such assistance was not provided to him until after the children had been in foster care for an extended period. It also found that HDSS had not provided sufficient assistance to Johnson with housing or transportation. The court noted that Johnson had recently begun therapy, was employed, and had housing. Although it did not "excuse" Johnson's marijuana use, it observed that marijuana use would be legal on July 1, 2021.

The circuit court found that the children had been in foster care "far too long" and that the "'[r]easonable period of time' contemplated by . . . Code Section 16.1-283 expired a long time ago." Nevertheless, it noted that the parents were "making marked progress" and that termination of their parental rights was not in the children's best interest "at this time." The court continued the termination hearing, but it warned the parents that their rights could be terminated at the next hearing if they did not "continue to cooperate, comply and make progress." All parties agreed to the ruling.

The next hearing, originally set for September, was continued to November 2021. The circuit court heard evidence briefly in November before conducting the third and final hearing in August 2022. The Court Appointed Special Advocate ("CASA") filed reports with the court in November 2021, March 2022, and August 2022. The three CASA reports indicate that, as of October 2021, Johnson "had not attended counseling most of the time because he was at work." The November report concluded that, despite the services in place for the parents, it was "concerning" that they had made "little progress . . . in their parenting abilities." Moreover, in January 2022, the boys' foster mother reported that D.J. returned from an eight-hour visit with his parents suffering from "a very bad diaper rash on his left leg" that was still healing over a week later. By March 2022, the parents had developed no childcare plan for the boys while they were working. In July 2022, Johnson's landlord announced he was not renewing Johnson's lease

because the parents had not taken care of the property, and Johnson had told Swindle that he planned to move to Michigan at the end of August where his family lived. The electricity in the house had been turned off since July 12, 2022.

In May 2022 the children returned from a visit with Johnson and his wife smelling of marijuana. Although Swindle arranged a random drug test for them in June 2022, they refused to take it without justification. In June 2022, HDSS suspended unsupervised visits with the children after A.J. told his foster mother that Johnson "spanks me so hard and that's why I don't want to go with them and that's why he scares me!" In response, Johnson began sending "threatening and aggressive" messages to Swindle, such that she had to block his number.

Meanwhile, A.J. had been in the care of his foster parents for 52 months and D.J. had been in their care for 38 months; both were thriving. A.J. resisted visits with Johnson and stated that he did not feel "secure or emotionally safe" with his biological parents. The final CASA report concluded that the foster parents met both boys' needs and provided them a safe, secure environment. The CASA report recommended that A.J. and D.J. remain in HDSS custody and that Johnson's parental rights be terminated.

The circuit court adopted the CASA's recommendation. Following the August 2022 hearing, the circuit court terminated Johnson's parental rights to A.J. and D.J. under Code § 16.1-283(C)(2). Johnson appeals.

## II. ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and

will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Focusing only on the circuit court's May 6, 2021 opinion letter, Johnson asserts that the court never cited any evidence or rendered any finding demonstrating concerns about D.J.'s welfare. Johnson emphasizes that the circuit court at one point found that D.J. was "born healthy with no issues" and was removed based solely on A.J.'s removal. Citing *Ridgeway*, 59 Va. App. 185, Johnson stresses that the parent-child relationship should be preserved when possible, and therefore, the circuit court should have allowed him the opportunity to maintain and develop a relationship with D.J.

The circuit court found that clear and convincing evidence supported the termination under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if it is in the best interests of the child and:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). As this Court has interpreted Code § 16.1-283(C)(2), "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts

before the court." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338 (1992)).

Johnson argues that, because D.J. was only in his custody briefly, there were no conditions to remedy vis-à-vis D.J. This argument ignores the circuit court's finding in the dispositional order that D.J. was "an abused or neglected child *or at risk of being abused or neglected by a parent . . . who has been adjudicated as having abused or neglected another child in the care of the parent.*" (Emphasis added.) When the circuit court entered that dispositional order, it had previously entered adjudicatory and dispositional orders concluding that A.J. was abused, neglected, or at risk of abuse of neglect.[3] Thus, the proper analysis is whether Johnson remedied the conditions placing D.J. at risk of abuse or neglect, thereby preventing D.J.'s return home to Johnson.

Johnson maintains that he did so "within a reasonable time . . . to the best of his abilities coupled with delays and inaction by [H]DSS to assist." He stresses that the circuit court found that HDSS did not initially provide him with guidance suited to his special needs. Although Johnson acknowledges that the circuit court heard additional evidence after the March 2021 hearing, he contends that the May opinion letter "clearly establishes that the conditions regarding A.J.'s removal were being addressed," despite the delay by HDSS in providing appropriate "trauma-based" services and counseling. Johnson argues that he developed a relationship with his sons under supervised conditions and, although he had obstacles to overcome, he was trying his best to meet the children's needs. He maintains that preservation of his parental bond is in the best interests of both children.

We disagree. Despite the circuit court's recognition in May 2021 that Johnson had had more than a "reasonable period of time" to remedy the conditions leading to his sons' removal, it

---

[3] Johnson did not appeal either dispositional order.

granted him an additional 18 months' grace so that he could take advantage of the "trauma-based" services offered by HDSS. Johnson does not dispute that HDSS provided him appropriate services between March 2021 and August 2022. Nevertheless, despite the circuit court's grace, Johnson missed counseling appointments, returned to marijuana use, lost his housing, and demonstrated poor anger management toward the children and toward his social worker.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison*, 42 Va. App. at 162). When the circuit court terminated Johnson's parental rights, A.J. had been in foster care more than four years and D.J. had been in foster care over three years. The boys were thriving in their foster care placement and were bonded to each other. Based on the record, we cannot say that the trial court abused its discretion in finding that HDSS proved, by clear and convincing evidence, that Johnson failed "to remedy substantially the conditions which led to or required continuation of the child[ren]'s foster care placement[s]" and that termination of Johnson's parental rights was in their best interests. *See* Code § 16.1-283(C) (requiring "clear and convincing evidence" that termination of parental rights is "in the best interests of the child").

### III. CONCLUSION

For the reasons stated, the circuit court did not err, and we affirm the judgment.

*Affirmed.*