COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

UNPUBLISHED

ASHLEY CRAIG KARNES

                                                MEMORANDUM OPINION*

v.      Record No. 1694-19-3                           PER CURIAM
                                                   JUNE 9, 2020

CAMPBELL COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

(Bryan E. Klein; The Central Virginia Law Center, PLLC, on briefs),
for appellant.

(David W. Shreve; Curtis L. Thornhill, Guardian *ad litem* for the
minor child, on brief), for appellee.


Ashley Craig Karnes (father) appeals the circuit court order terminating his parental rights to

his child. Father argues that the circuit court erred by terminating his parental rights under Code

§ 16.1-283(B) because "'the neglect or abuse suffered by such child' did not present a 'serious and

substantial threat to his life, health or development'" and "the abuse or neglect is so specific and

unique that there can be no reasonable determination whether the 'conditions which resulted in such

neglect or abuse can be substantially corrected or eliminated.'" Father further argues that the circuit

court erred by terminating his parental rights under Code § 16.1-283(C)(2) because "the abuse or

neglect is so specific and unique that there can be no reasonable determination whether [father]

'failed or [has] been unable to make substantial progress toward elimination of the conditions which

led to or required continuation of the child's foster care placement.'" Upon reviewing the record

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

The child who is the subject of this appeal had lived with his biological mother until he was approximately two years old, and then the paternal grandmother was awarded custody of him.[2] In August 2012, father was granted custody of the then eight-year-old child.

The child was diagnosed with attention deficit hyperactivity disorder and displayed oppositional defiant type behaviors. According to the child's psychiatrist, the child presented with "significant anxiety" and "a lot of mood issues," requiring medication and therapy. Since 2013, father and his wife, Susan Karnes (stepmother), had been involved with the Children's Services Act Coordinator and participated in Family Assessment and Planning Team meetings to obtain services for the child. From April 2015 to September 2015, the child was placed in a residential treatment facility to receive intense therapeutic services. The family also received outpatient counseling services, intensive in-home services, intensive family services, and crisis

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father was incarcerated at the time.

- 2 -

stabilization services. The child attended individual therapy and was prescribed psychiatric medication.

The child's counselor worked with him on his behaviors and the cause of those behaviors. Father was usually at work when the counselor met with the child, so the counselor worked with stepmother on how to manage the child's behaviors. The counselor described stepmother as the child's primary caregiver and father as minimally engaged in the process.

In August 2017, father and stepmother indicated that they no longer wanted any services. Father disagreed with the treatment plan and wanted the child to be placed in residential treatment. The counselor advised father that "there was absolutely no reason why [the child] should be placed in residential treatment."

In March 2018, intensive family services were reinstated. During that spring, father repeatedly requested help because the child was "fixated on hurting kids at school, harming kids at school and talking about shooting kids at school in particular." On May 10, 2018, after the child had made a threatening statement at school, he was admitted to the Child and Adolescent Psychiatric Unit at Virginia Baptist Hospital (Krise 6). This was the child's seventh in-patient treatment and the third at Krise 6.

On May 15, 2018, the child was ready to be discharged. Father did not want the child returned to his home, and instead, wanted the child placed in residential care. The Department became involved after father refused to take the child home. The Department scheduled a family meeting, but father did not appear. Father was aware that the child would be discharged to Child Protective Services after the meeting. On May 18, 2018, the Department considered the child abandoned and placed him in foster care.

In several follow-up meetings and letters, the Department reviewed with father what was required of him "in order to work toward the goal of return home." The Department required

father to become more involved in the child's treatment and demonstrate "appropriate discipline and parenting skills." To assist with that goal, the Department recommended numerous services, including parenting classes, anger management classes, individual therapy, and family counseling. Father also had to actively participate in visitation and outreach services. The Department further required father to complete a psychological and parenting assessment and follow through with all recommended services. Father was "very hostile" and told the Department that he did not need any services.

On June 7, 2018, the Campbell County Juvenile and Domestic Relations District Court (the JDR court) entered an adjudicatory order, and on July 23, 2018, it entered a dispositional order, finding that the child was abused and neglected. Father appealed the dispositional order to the circuit court. After hearing the parties' evidence and reviewing the parties' briefs, the circuit court issued a letter opinion and found that father had "neglected or refused to provide care under Va. Code § 16.1-228(2) and that he abandoned [the child] under Va. Code § 16.1-228(3)." On January 22, 2019, the circuit court entered an order memorializing its ruling that the child was abused and neglected.[3]

On April 5, 2019, the JDR court approved the foster care goal of adoption and directed the Department to file a petition to terminate parental rights. Father did not appeal that ruling. On June 6, 2019, the JDR court terminated father's parental rights. Father timely appealed the JDR court's termination ruling.

The parties appeared before the circuit court on September 6, 2019. The Department presented evidence about father's continued refusal to participate in most of the services offered

---

[3] Father appealed the circuit court ruling to this Court, which dismissed the appeal for failure to file an opening brief. See Karnes v. Campbell Cty. Dep't of Soc. Servs., Record No. 0283-19-3 (Va. Ct. App. July 16, 2019).

and his lack of cooperation with the Department. Father repeatedly told the Department that he did not need any services and would not participate in them.

The Department explained that the only services that father had participated in were supervised visitation and family engagement services. Father regularly visited the child and attended family engagement services until November 2018, when the Department stopped the visitations due to father's lack of cooperation, the child's wishes, and the counselor's recommendation. Once the visitations ended, father attended only three additional family engagement sessions. Father continued to request visitation with the child through March 2019, but after the JDR court approved the foster care goal of adoption, father ceased all communications with the Department.

The Department argued that father "did not make any progress toward remediating the issues that brought [the child] into care . . . ." Father did not participate in the required services and repeatedly stated that the child should be placed in a residential treatment facility. The Department explained that father was not cooperative and had "consistently demonstrated a high degree of hostility and anger."

The child's psychiatrist opined that the child was "pretty stable," but continued "to struggle from time to time, which is the nature of the challenges that he has." While in foster care, the child had not displayed any "extreme" behaviors, although he had had "episodes of delusional thinking and paranoia." The foster mother testified that within the six months before the circuit court hearing, the child had become "really disrespectful, talking back, [and] argumentative." The child was receiving outpatient counseling and psychiatric care.

Father testified that he loved the child and wanted to see him. Father explained that he did not participate in the Department's services because he did not need them; however, he was now willing to do "[a]nything" to have custody restored to him.

After hearing the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2). This appeal followed.

ANALYSIS

Father argues that the circuit court abused its discretion in terminating his parental rights. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services."

Toms, 46 Va. App. at 271 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)).  The Department "is not required to force its services upon an unwilling or disinterested parent."  Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

Father emphasizes that he had been engaged with services for years before the child was hospitalized in May 2018.  He argues that there was "no reasonable way to determine whether progress [was] being made to remedy substantially the issues that led to foster care when the only thing that occurred was a parent disagreeing whether his son should be discharged from the hospital."  The Department, however, had explained to father on several occasions what he needed to do before the child could return home.  The psychological and parenting assessment would have assisted in identifying services for the family, but father refused to participate in the evaluation.  The Department referred father to parenting classes, individual therapy, family counseling, and anger management classes, all of which father refused to attend.  Aside from participating in supervised visitation and some family engagement services, father was unwilling to complete the required services.

During the circuit court hearing, father continued to state that he did not need any services, but he would do "anything" to have the child returned to him.  "Code § 16.1-283(C)(2)'s twelve-month time limit 'was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement.'"  Thach, 63 Va. App. at 171 (quoting L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56 (2003)).  The child had been in foster care for approximately sixteen months, and father was not cooperative.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if,

a parent will be capable of resuming his responsibilities." <u>Tackett</u>, 62 Va. App. at 322 (quoting

<u>Kaywood v. Halifax Cty. Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540 (1990)).

Based on the record before us, the circuit court did not err in terminating father's parental

rights under Code § 16.1-283(C)(2). "When a trial court's judgment is made on alternative

grounds, we need only consider whether any one of the alternatives is sufficient to sustain the

judgment of the trial court, and if so, we need not address the other grounds." <u>Kilby v. Culpeper</u>

<u>Cty. Dep't of Soc. Servs.</u>, 55 Va. App. 106, 108 n.1 (2009); <u>see also</u> <u>Fields v. Dinwiddie Cty.</u>

<u>Dep't of Soc. Servs.</u>, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights

under one subsection of Code § 16.1-283 and did not need to address termination of parental

rights pursuant to another subsection). Therefore, we do not need to consider whether the circuit

court erred in terminating father's parental rights pursuant to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>