COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and AtLee
Argued at Leesburg, Virginia


STEVEN BERNARDE ODOMS

MEMORANDUM OPINION* BY
v.        Record No. 0624-22-4        JUDGE RICHARD Y. ATLEE, JR.
                                      DECMEBER 6, 2022

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

(Mehagen D. McRae; Fayez Goriup McRae PLLC, on briefs), for
appellant.  Appellant submitting on briefs.

May Shallal, Assistant County Attorney (Sean Robinson, Guardian
*ad litem* for the minor child, on brief), for appellee.


Steven Bernarde Odoms ("father") appeals the circuit court's order terminating his parental

rights to his minor child, S.O.  Father argues that the circuit court erred in terminating his parental

rights under Code § 16.1-283(C)(2) because it lacked clear and convincing evidence that he "did not

substantially remedy the conditions which led to the termination of [his] parental rights."  We find

no error and affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Father and Rachel Johnson ("mother") are the biological parents of S.O. On July 2, 2020, Reston Hospital Center admitted mother. She was "agitated and psychotic" and unaware that she was thirty-four weeks pregnant. Mother refused treatment, and she was placed on a medical emergency temporary detention order due to her condition and the fact that she was in labor. She gave birth to S.O. that same day.

Father went to the hospital, but he questioned paternity, refused to sign the birth certificate, and did not interact with S.O. Father claimed that hospital staff would not give him information about S.O. and that "the nurses wanted to keep his child away from him." Hospital staff banned father from the hospital "because he raised his voice and used profane words."

The day after S.O. was born, Child Protective Services received a report alleging that mother was physically neglecting S.O. and questioning her ability to care for S. O. Based on mother's condition and father's "extensive criminal history, untreated mental illness, and unstable housing," the Fairfax County Department of Family Services ("the Department") determined that emergency removal of S.O. was "needed to ensure [S.O.'s] safety and well-being."

The Department filed a foster care plan with the goal of returning S.O. home. The Fairfax County Juvenile and Domestic Relations District Court (the "JDR court") adjudicated that S.O. was

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

abused and neglected and entered dispositional orders granting the Department temporary custody of S.O., and it approved the foster care plan. The JDR court also ordered the father to submit to an alcohol and drug services assessment, a parent-child assessment, and to sign "any and all releases presented . . . by the Department . . . so that [it] may monitor compliance with this order and determine the best interests of the child."

For successful reunification, the Department required father to complete the court-ordered services, develop a care plan for S.O., demonstrate that he could meet S.O.'s basic and developmental needs, and refrain from drug use. In April 2021, the Department filed a foster care plan with the goal of adoption and a petition to terminate the parents' residual parental rights, arguing that both parents failed to remedy the conditions that brought S.O. into the Department's custody. On May 24, 2021, the JDR court approved the foster care plan with the goal of adoption and terminated both parents' parental rights. Father appealed the decision to the circuit court.[2]

In the circuit court, the Department argued that father had failed to remedy the conditions leading to S.O.'s removal. Father had initially signed release consent forms so that the Department could monitor his compliance with his services. But when the consent forms expired, he refused to sign new ones despite the Department's repeated requests, which meant they were no longer able to monitor his progress with the ordered services.

Father attended only one of the requested drug screens; at the one he attended, he refused to complete the hair follicle screen and his urine sample came back diluted and positive for marijuana. He also failed to provide the Department with information about his employment, income, and engagement in mental health services. Father also had "multiple run-ins with the police" during the pendency of the case, and he was charged with trespass.

---

[2] Mother did not appeal the termination of her parental rights.

Father was referred to the Multicultural Clinical Center ("MCC") for a psychological evaluation and a parent-child assessment. Father had to complete the evaluation in segments because he walked out of the first session part-way through. The evaluator also felt that father "sabotaged his own performance," first by walking out, then by alternating between "friendly and forthcoming" and "guarded and suspicious." During the evaluation, he misrepresented his criminal record and substance abuse history, and he did not acknowledge that he lacked the financial means to support S.O. The evaluator was also concerned that father "fail[ed] to recognize the seriousness of [mother's] mental illness" and the effect it would have on his plan to have her help care for S.O.[3] The evaluator also diagnosed father with bipolar disorder and found that he exhibited "extremely poor judgment," which raised concerns about his ability to parent.

During the pendency of the case, father threatened the foster care worker and the guardian *ad litem*, sometimes posting threats on social media. After one in-person visit, father refused to return S.O. to the MCC staff and directed profanity at them. He also became agitated and aggressive whenever the visit supervisor tried to give him guidance. His volatile conduct during in-person visits created safety concerns for S.O., the Department's staff, and the MCC's staff. As a result, father's visits were changed to virtual visits.[4] He initially refused to participate in virtual visits, so he did not see S.O. for three months. Once he did agree to participate, he was inconsistent in his attendance. During one virtual visit, he threatened to hit mother, who was with him.

During the hearing, father testified that he tried to do all the Department asked of him. He explained that he continued to see a psychiatrist until his insurance lapsed, and he testified that he was taking his medication as required. He had also completed the fatherhood engagement class and

_____

[3] Mother attended the first segment of the evaluation with father, and the evaluator testified that mother was actively psychotic during that time.

[4] Father was also required to take the nurturing parenting program, but due to his volatile conduct and treatment of the program staff, he was denied entry into the program.

was enrolled in the nurturing parenting class at the time of the hearing. Father stated that he completed the alcohol and drug assessment and that he had "never been on any drugs in [his] life." Father testified that he did not sign the release forms because the "[p]eople who actually administered" his test and gave him his medicine told him that "it would be a bad idea."

Based on all the evidence presented to the circuit court, including father's demeanor during his testimony, the circuit court found that father "suffer[ed] from a significant condition that affect[ed] his mental health . . . [that was] not completely under [his] control." The circuit court noted that in responding to questions, father "rambled on with things that made no sense, w[as] completely nonresponsive," and demonstrated a "a complete lack of understanding of [the termination] process," which he had been involved in for eighteen months. The circuit court found that during the lengthy time S.O. had been in foster care, father failed to substantially remedy the conditions that resulted in S.O.'s placement into foster care—despite the "substantial" efforts made by the Department and other agencies. The circuit court based its finding, in part, on father's "inability to simply act in a way that is not threatening or intimidating or disruptive" and father's "unwillingness to process the information that people [gave him]." It also pointed to father's failure to sign the consent release forms. Accordingly, the circuit court terminated father's parental rights. Father now appeals to this Court.

## II. ANALYSIS

Father argues that the circuit court lacked clear and convincing evidence to find that he "did not substantially remedy the conditions which led to the termination of [his] parental rights." We disagree.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018)

(alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Code § 16.1-283(C)(2) states that a court may terminate parental rights if it finds, by clear and convincing evidence, that it is in the best interests of the child and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Father contends that the child was removed from his custody because of mother's "extreme mental health issues" and her inability to care for S.O. He argues that once paternity was established, he completed all court-ordered obligations and demonstrated his ability to provide and care for S.O.

Father's argument focuses solely on the reasons the child was removed from mother's care, and he ignores the fact that the child was removed from his custody because of his "extensive criminal history, untreated mental illness, and unstable housing." Although father signed the initial releases that allowed the Department to monitor his progress, once they expired, he refused to sign new ones—preventing the Department from monitoring his compliance with services.

Further, father's volatile behavior was a significant hurdle to the Department's attempts to provide him with services to remedy the conditions. Father's behavior caused him to be denied entry to the required nurturing parenting program, and it forced the Department to suspend visitation and ultimately change his visitation from in-person to virtual visits. He walked out of his first parent-child assessment, and when he returned, the evaluator felt that he self-sabotaged by how he behaved. He also failed to comply with the drug screening, and the one time he did comply, he tested positive for marijuana use. Thus, as the circuit court found, father did not take advantage of the services and efforts made by the Department and other agencies.

Father was unable to recognize the seriousness of mother's mental illness or its effect on his plans to care for S.O. Nor was he able to regulate his behavior and refrain from acting in an aggressive and disruptive way. Based on the evidence presented and father's own behavior during the hearing, father "suffer[ed] from a significant condition that affects his mental health," and despite taking medication, the condition was "not completely under [his] control." Accordingly, we cannot say that the circuit court erred when it concluded that father had not remedied the conditions that resulted in the Department taking custody of S.O. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Considering the totality of the record, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).[5]

---

[5] We note also that father's brief does not comply with the requirements of Rule 5A:20(e), which requires the brief to contain "the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). Father does not cite a single legal authority in the argument section of his brief.

III. CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*